

U.S. Department of Justice

*Joshua S. Levy*
*Acting United States Attorney*
*District of Massachusetts*

*Main Reception: (617) 748-3100*

John Joseph Moakley United States Courthouse
1 Courthouse Way
Suite 9200
Boston, Massachusetts 02210

December 10, 2023

John J. Falvey, Jr., Esq.
Goodwin Procter LLP
100 Northern Avenue
Boston, MA 02210

      Re:    United States v. Joao Mendes
               Criminal No. 22-cr-10167-NMG

Dear Mr. Falvey:

      The United States Attorney for the District of Massachusetts and the United States Department of Justice, Fraud Section (jointly, "the government") and your client, Joao Mendes ("Defendant"), agree as follows, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B):

      1.    <u>Change of Plea</u>

      Defendant will waive Indictment and plead guilty to Count One of the Information: wire fraud, in violation of 18 U.S.C. § 1343. Defendant admits that Defendant committed the crime specified in the count and is in fact guilty of that crime.

      2.    <u>Penalties</u>

      Defendant faces the following maximum penalties: incarceration for 20 years; supervised release for three years; a fine of $250,000 or twice the gross gain or loss, whichever is greater; a mandatory special assessment of $100; restitution; and forfeiture to the extent charged in the Information.

      Defendant understands that, if Defendant is not a United States citizen by birth, pleading guilty may affect Defendant's immigration status. Defendant agrees to plead guilty regardless of any potential immigration consequences, even if Defendant's plea results in being automatically removed from the United States.

3. <u>Sentencing Guidelines</u>

The government agrees, based on the following calculations, that Defendant's total "offense level" under the United States Sentencing Guidelines is 20:

    a) Defendant's base offense level is 7 because Defendant is pleading guilty to an offense reference to this guideline (USSG § 2B1.1(a)(1));

    b) Defendant's offense level is increased by 16, because the loss from the offense was more than $1,500,000 but not more than $3,500,000 (USSG § 2B1.1(b)(1)(I));

    c) Defendant's offense level is increased by 2, because the offense involved the use of sophisticated means and Defendant intentionally engaged in or caused the conduct constituting sophisticated means (USSG § 2B1.1(b)(10)(C));

    d) Defendant's offense level is decreased by 2, because the Defendant meets the criteria set forth in USSG § 4C1.1(a) (USSG § 4C1.1(a))

    e) Defendant's offense level is further decreased by 3, because Defendant has accepted responsibility for Defendant's crime (USSG § 3E1.1).

Defendant agrees with subsections a), b), d), and e) but reserves the right to argue that the sophisticated means enhancement under subsection c) does not apply.

Defendant understands that the Court is not required to follow this calculation or even to sentence Defendant within the Guidelines and that Defendant may not withdraw Defendant's guilty plea if Defendant disagrees with how the Court calculates the Guidelines or with the sentence the Court imposes.

Defendant also understands that the government will object to any reduction in Defendant's sentence based on acceptance of responsibility if: (a) at sentencing, Defendant (directly or through counsel) indicates that Defendant does not fully accept responsibility for having engaged in the conduct underlying each of the elements of the crime to which Defendant is pleading guilty; or (b) by the time of sentencing, Defendant has committed a new federal or state offense, or has in any way obstructed justice.

If, after signing this Agreement, Defendant's criminal history score or Criminal History Category is reduced, the government reserves the right to seek an upward departure under the Guidelines.

Nothing in this Plea Agreement affects the government's obligation to provide the Court and the U.S. Probation Office with accurate and complete information regarding this case.

4. <u>Sentence Recommendation</u>

The government agrees to recommend the following sentence to the Court:

    a) incarceration for 30 months;

    b) a fine within the Guidelines sentencing range as calculated by the parties, unless the Court finds that Defendant is not able, and is not likely to become able, to pay a fine;

    c) 12 months of supervised release;

    d) a mandatory special assessment of $100, which Defendant must pay to the Clerk of the Court on or before the date of sentencing;

    e) restitution of $1,542,759.50; and

    f) forfeiture as set forth in Paragraph 6.

5. <u>Waiver of Appellate Rights and Challenges to Conviction or Sentence</u>

Defendant has the right to challenge Defendant's conviction and sentence on "direct appeal." This means that Defendant has the right to ask a higher court (the "appeals court") to look at what happened in this case and, if the appeals court finds that the trial court or the parties made certain mistakes, overturn Defendant's conviction or sentence. Also, in some instances, Defendant has the right to file a separate civil lawsuit claiming that serious mistakes were made in this case and that Defendant's conviction or sentence should be overturned.

Defendant understands that Defendant has these rights, but now agrees to give them up. Specifically, Defendant agrees that:

    a) Defendant will not challenge Defendant's <u>conviction</u> on direct appeal or in any other proceeding, including in a separate civil lawsuit; and

    b) Defendant will not challenge any prison sentence of 33 months or less or any court orders relating to forfeiture, restitution, fines or supervised release. This provision is binding even if the Court's Guidelines analysis is different than the one in this Agreement.

Defendant understands that, by agreeing to the above, Defendant is agreeing that Defendant's conviction and sentence will be final when the Court issues a written judgment after the sentencing hearing in this case. <u>That is, after the Court issues a written judgment, Defendant will lose the right to appeal or otherwise challenge Defendant's conviction and sentence regardless of whether Defendant later changes Defendant's mind or finds new information that would have led Defendant not to agree to give up these rights in the first place.</u>

Defendant is agreeing to give up these rights at least partly in exchange for concessions the government is making in this Agreement.

The parties agree that, despite giving up these rights, Defendant keeps the right to later claim that Defendant's lawyer rendered ineffective assistance of counsel, or that the prosecutor or a member of law enforcement involved in the case engaged in misconduct serious enough to entitle Defendant to have Defendant's conviction or sentence overturned.

6. Forfeiture

Defendant understands that the Court will, upon acceptance of Defendant's guilty plea, enter an order of forfeiture as part of Defendant's sentence, and that the order of forfeiture may include assets directly traceable to Defendant's offense, substitute assets and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offense.

The assets to be forfeited specifically include, without limitation, the following:

a. $1,542,759.50, to be entered in the form of an Order of Forfeiture (Money Judgment), representing the total amount of proceeds derived from Defendant's violation of 18 U.S.C. § 1343; and

b. the following directly forfeitable assets, which constitute or were derived from proceeds traceable to Defendant's violation of 18 U.S.C. § 1343:

   1) $103.45, seized on or about February 24, 2021, from Bank of America account x2292 in the name of Quantum World Enterprises LLC;

   2) $21,384.02 seized on or about February 24, 2021, from the Interactive Brokers account x9180 in the name of Quantum World Enterprises LLC;

   3) $5,000, seized on or about February 24, 2021, from Goldman Sachs account x8818 in the name of Joao Mendes;

   4) $900, seized on or about February 24, 2021, from the Cambridge Savings Bank account x9762 in the name of MB Records Inc.;

   5) $7,678.31, seized on or about February 24, 2021, from Bank of America account x9714 in the name of Joao R Mendes;

   6) $188.66, seized on or about February 24, 2021, from Bank of America account x4402 in the name of Joao R Mendes;

   7) $97.38, seized on or about February 24, 2021, from Bank of America account x6132 in the name of Joao R Mendes;

   8) $175.07, seized on or about February 24, 2021, from Bank of America account x6145 in the name of Joao R Mendes;

9) $192, seized on or about February 24, 2021, from Eastern Bank account x3770 in the name of Joao R Mendes and another[1];

10) $2,630, seized on or about February 24, 2021, from Eastern Bank account x5446 in the name of Joao R Mendes and another;

11) $18,000, seized on or about February 24, 2021, from Capital One N.A. account x6816 in the name of Joao R Mendes and another;

12) Any and all funds, seized on or about February 24, 2021, from the Kraken account ending in O7IQ, held in the name Joao Mendes, including, but not limited to:
   i. 0.04664905 BTC;
   ii. 103.58945230 ETH;
   iii. 209656.81881100 ADA;
   iv. 9996.00000000 BAT;
   v. 9994.00000000 STORJ;
   vi. 228.23041000 SNX
   vii. 30.10681000 AAVE;
   viii. 33754.82120000 MANA;
   ix. 5149.11732700 XTZ;
   x. 2081.65634000 ATOM;
   xi. 22515.90792147 DOT; and
   xii. 17.1148276 KSM;

13) All funds except 11.630653 LINK & 11.290393 LINK, seized on or about February 24, 2021, from the Gemini Trust Company account ending in 7384, held in the name Joao Mendes, including but not limited to:
   i. 30.19002081 CRV;
   ii. 0.09745841 AAVE;
   iii. 1.68059207 ETH;
   iv. 3.4527146 LTC; and
   v. $157.77;

14) $183.90, seized on or about February 24, 2021, from Eastern Bank account x7458 held in the name Dominique M Mendes;

15) $14,774.91, seized on or about February 24, 2021, from Eastern Bank account x6242 held in the name Dominique M Mendes;

16) $2,682.74, seized on or about February 24, 2021, from the Bank of

---

[1] The United States Postal Inspection Service administratively forfeited this asset on November 2, 2023.

America account x2990 in the name of Evamarie S Joubert;

17) $57,962.68, seized on or about February 24, 2021, from the Bank of America account x6489 held in the name of La Femme Media LLC;

18) $29,847.30, seized on or about February 24, 2021, from the Bank of America account x9453 in the name of Evamarie S. Joubert;

19) $26,469.39, seized on or about February 24, 2021, from Interactive Brokers account x2737, held in the name of La Femme Media LLC;

20) Any and all funds, seized or about February 24, 2021, in the BAM Trading Services Inc. ("Binance.US") account with User ID ending in 6593, and held in the name of Joao R Mendes, including but not limited to:
    i. .009831 BTC;
    ii. 11108.4426 VTHO;
    iii. 15.827673 XTZ;
    iv. 107,550.242 VET;
    v. 1,078.8194 ATOM;
    vi. 1807.07504 ALGO;
    vii. 30.658 WAVES;
    viii. 81.30000000 USDT;
    ix. .16641 ETH; and
    x. 61452.005 ADA;

21) All funds, except $8,750, 448.5776 XRP, 873.0526 XRP and 0.010578 BTC, seized on or about February 24, 2021, from Coinbase account ending in F441, held in the name Joao Mendes, including, but not limited to:
    i. 4.33225635 BTC;
    ii. 18.0000 BTC;
    iii. 12.0000 BTC;
    iv. 1,967.9000 ATOM;
    v. 30.99229603 MKR;
    vi. 29,444.2528975 XLM;
    vii. 3,854.2200 LINK;
    viii. 14791.9930 OMG;
    ix. 5962.001546 XTZ;
    x. 39128.0000 OXT;
    xi. 82.82694077 COMP;
    xii. 27080.891495 ALGO;
    xiii. 4,104.58261364 UNI;

      xiv.    7,072.87517 ZRX;
      xv.    3.6417 EOS;
      xvi.    0.00000064 YFI;
      xvii.    4.27842985 NU;
      xviii.    2.08085345 CGLD;
      xix.    1.40446132 GRT; and
      xx.    10.0000 BAND;

22) Funds surrendered from Lafayette Life Insurance Company on April 9, 2021 pursuant to a Seizure Warrant, specifically:
    i. $7,991.54 - policy #A 1030942;
    ii. $10,248.83 – policy #A 1043019;

23) Any and all funds held in any Gemini account in the name Evamarie Joubert including, but not limited to:
    i. 4 ETH;

24) Cryptocurrency voluntarily transferred to the United States on or about April 11, 2023, from a Bybit account in the name Joao Mendes, including:
    i. 0.31099727 BTC;

25) Cryptocurrency voluntarily transferred to the United States on or about April 11, 2023 from a Hotbit account in the name Joao Mendes, including:
    i. 1.68313606 YFII;

26) Cryptocurrency voluntarily transferred to the United States on or about April 11, 2023, from a Kucoin account in the name Joao Mendes, including:
    i. 0.04697612 BTC; and
    ii. 0.01593172 BTCa; and

27) Cryptocurrency voluntarily transferred to the United States on or about March 1, 2023, from the Phemex account in the name Joao Mendes, including but not limited to:
    i. 0.75374451 BTC.[2]

---

[2] With Defendant's assent, the government moved for orders authorizing the interlocutory sale of cryptocurrency. The court ordered the interlocutory sale of the cryptocurrency listed in items b.12), 13), 20), 21), and 27) above on April 3, 2023 (Docket No. 22 "First Order"). To date, the interlocutory sale of the cryptocurrency in the First Order has generated $1,534,340.56 in

Defendant admits that these assets are subject to forfeiture on the grounds that they constitute, or are derived from, proceeds traceable to Defendant's offense. Defendant acknowledges and agrees that the government is entitled to forfeit any and all appreciation in the value of assets subject to direct forfeiture as such appreciation is derived from the assets subject to forfeiture.

Defendant also admits that $1,542,759.50 is subject to forfeiture on the grounds that it is equal to the amount of proceeds Defendant derived from the offense. The United States agrees to credit against the forfeiture money judgment the net sale proceeds derived from the forfeiture of the specific assets listed as items b.1)-27), after the final order of forfeiture is entered and disposal consistent with 21 U.S.C. § 853(h) and other applicable laws and regulations. However, Defendant acknowledges and agrees that the value of the directly forfeitable assets, including appreciation, may exceed the amount of the forfeiture money judgment. In that event, Defendant expressly waives any argument that property subject to direct forfeiture is limited, in any way, by the amount of the forfeiture money judgment.

Defendant acknowledges and agrees that the amount of the forfeiture money judgment represents the amount of proceeds that the Defendant obtained (directly or indirectly) as a result of the crimes to which Defendant is pleading guilty and that, due at least in part to the acts of Defendant, the proceeds or property have been transferred to, or deposited with, a third party, spent, cannot be located upon exercise of due diligence, placed beyond the jurisdiction of the Court, substantially diminished in value, or commingled with other property which cannot be divided without difficulty. Accordingly, Defendant agrees that the government is entitled to forfeit as "substitute assets" any other assets of Defendant up to the value of the now missing directly forfeitable assets.

Defendant agrees to consent to the entry of orders of forfeiture for such property and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2, and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding the forfeiture at the change-of-plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. Defendant understands and agrees that forfeiture shall not satisfy or affect any fine, lien, penalty, restitution, cost of imprisonment, tax liability or any other debt owed to the United States. Pursuant to the Asset Forfeiture Policy Manual (2021), Chapter 14, Sec. II.B.2 and 28 C.F.R. Part 9.8, upon a determination that the United States Attorney's Office for the District of Massachusetts can make the required representations set forth therein, the United States Attorney's Office for the District of Massachusetts agrees to submit a restoration request to the Money Laundering and Asset Recovery Section of the Department of Justice, seeking approval for

---

proceeds. Also with Defendant's assent, the government moved for, and the Court ordered on May 15, 2023, the interlocutory sale of the cryptocurrency listed in items b.24) to 26) (Docket No. 28 "Second Order"). The interlocutory sale of cryptocurrency in the Second Order has generated $11,036.16 in proceeds. If the plea is accepted, the government will move to forfeit the net proceeds from the sale of cryptocurrency in lieu of the actual cryptocurrency. In addition, the total amount of currency in custody from non-cryptocurrency accounts and available for criminal forfeiture is approximately $206,318.18.

8

assets forfeited in satisfaction of the forfeiture money judgment to be restored back to the victims in this case, which may, in turn, satisfy in full or in part any restitution order. Defendant acknowledges that the Attorney General, or his designee, has the sole discretion to approve or deny the restoration request.

Defendant agrees to assist fully in the forfeiture of the foregoing assets. Defendant agrees to promptly take all steps necessary to pass clear title to the forfeited assets to the government, including but not limited to executing any and all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are not sold, disbursed, wasted, hidden or otherwise made unavailable for forfeiture. Defendant further agrees (a) not to assist any third party in asserting a claim to the forfeited assets in an ancillary proceeding, and (b) to testify truthfully in any such proceeding.

If the government requests, Defendant shall deliver to the government within 30 days after signing this Plea Agreement a sworn financial statement disclosing all assets in which Defendant currently has any interest and all assets over which Defendant has exercised control, or has had any legal or beneficial interest. Defendant further agrees to be deposed with respect to Defendant's assets at the request of the government. Defendant agrees that the United States Department of Probation may share any financial information about the Defendant with the government.

Defendant also agrees to waive all constitutional, legal, and equitable challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement, including, but not limited to, any argument that the forfeiture constitutes an excessive fine or punishment.

Defendant hereby waives and releases any claims Defendant may have to any vehicles, currency, or other personal property seized by the government, or seized by any state or local law enforcement agency and turned over to the government, during the investigation and prosecution of this case, and consents to the forfeiture of all such assets.

This waiver of claims specifically excludes (a) certain seized electronics that the government and the Defendant agree were not used in connection with the offense, and which the government agrees to return to the Defendant after sentencing; and (b) certain seized electronics that the government and the Defendant agree were used in connection with the offense, which the government agrees to return to the Defendant along with the information stored on such devices at the conclusion of the forfeiture proceedings, including the final disposition of any forfeited assets. The Defendant hereby waives any and all claims arising from or relating to the seizure, detention, and return of these seized electronics.

7. <u>Civil Liability</u>

This Plea Agreement does not affect any civil liability, including any tax liability, Defendant has incurred or may later incur due to Defendant's criminal conduct and guilty plea to the charges specified in Paragraph 1 of this Agreement.

9

8. <u>Breach of Plea Agreement</u>

Defendant understands that if Defendant breaches any provision of this Agreement, violates any condition of Defendant's pre-trial release or commits any crime following Defendant's execution of this Plea Agreement, Defendant cannot rely upon such conduct to withdraw Defendant's guilty plea. Defendant's conduct, however, would give the government the right to be released from his commitments under this Agreement, to pursue any charges that were, or are to be, dismissed under this Agreement, and to use against Defendant any of Defendant's statements, and any information or materials Defendant provided to the government during investigation or prosecution of Defendant's case—even if the parties had entered any earlier written or oral agreements or understandings about this issue.

Defendant also understands that if Defendant breaches any provision of this Agreement or engages in any of the aforementioned conduct, Defendant thereby waives any defenses based on the statute of limitations, constitutional protections against pre-indictment delay, and the Speedy Trial Act, that Defendant otherwise may have had to any charges based on conduct occurring before the date of this Agreement.

9. <u>Who is Bound by Plea Agreement</u>

This Agreement is only between Defendant and the U.S. Attorney's Office for the District of Massachusetts and the Fraud Section of the United States Department of Justice. It does not bind the Attorney General of the United States or any other federal, state, or local prosecuting authorities.

10. <u>Modifications to Plea Agreement</u>

This Agreement can be modified or supplemented only in a written memorandum signed by both parties, or through proceedings in open court.

\* \* \*

If this letter accurately reflects the agreement between the government and Defendant, please have Defendant sign the Acknowledgment of Plea Agreement below. Please also sign below as Witness. Return the original of this letter to Assistant U.S. Attorney Mackenzie A. Queenin.

Sincerely,

JOSHUA S. LEVY
Acting United States Attorney

By: _____
STEPHEN E. FRANK
Chief, Securities, Financial & Cyber Fraud Unit
SETH B. KOSTO
Deputy Chief
Securities, Financial & Cyber Fraud Unit

_____
MACKENZIE A. QUEENIN
CAROL E. HEAD
Assistant U.S. Attorneys

GLENN S. LEON
Chief, Fraud Section
U.S. Department of Justice
Criminal Division, Fraud Section

_____
JENNIFER L. BILINKAS
Trial Attorney

ACKNOWLEDGMENT OF PLEA AGREEMENT

I have read this letter and discussed it with my attorney. The letter accurately presents my agreement with the United States Attorney's Office for the District of Massachusetts and the Fraud Section of the United States Department of Justice (jointly, "the government"). There are no unwritten agreements between me and the government, and no United States government official has made any unwritten promises or representations to me in connection with my guilty plea. I have received no prior offers to resolve this case.

I understand the crime I am pleading guilty to, and the maximum penalties for that crime. I have discussed the Sentencing Guidelines with my lawyer and I understand the sentencing ranges that may apply.

I am satisfied with the legal representation my lawyer has given me and we have had enough time to meet and discuss my case. We have discussed the charge against me, possible defenses I might have, the terms of this Agreement and whether I should go to trial.

I am entering into this Agreement freely and voluntarily and because I am in fact guilty of the offense. I believe this Agreement is in my best interest.

_____
JOAO MENDES
Defendant

Date: _____December 12, 2023_____

I certify that Joao Mendes has read this Agreement and that we have discussed what it means. I believe Joao Mendes understands the Agreement and is entering into it freely, voluntarily, and knowingly. I also certify that the United States has not extended any other offers regarding a change of plea in this case.

*John J. Falvey Jr.*
_____
JOHN J. FALVEY, JR., Esq.
Attorney for Defendant

Date: _____December 12, 2023_____

12